UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.: _____

| | |
|---|---|
| Brooke Schommer,<br><br>       Plaintiff,<br>v.<br><br>Central Credit Services, Inc.,<br>and George Armstrong,<br><br>       Defendants. | **COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and out of the invasions of Plaintiff's personal and financial privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff Brooke Schommer is a natural person who resides in the City of Mayer, County of Carver, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. §§ 1692k(a).

5. Defendant Central Credit Services, Inc. (hereinafter "Defendant CCS") is a collection agency operating from an address of P.O. Box 15118, Jacksonville, FL 32239-5118, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6. Defendant George Armstrong (hereinafter "Defendant Armstrong") is a natural person who was employed at all times relevant herein by Defendant CCS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

7. In or around 2007, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a personal home equity loan debt with Wells Fargo Bank, in the approximate amount of $28,658.56.

8. Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff.

*Wednesday, April 6th, 2011 10:39 AM*

9. On or about April 6, 2011, Defendant CCS's collector, Defendant Armstrong, contacted Plaintiff by telephone in an effort to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

10. Defendant Armstrong called and left a voicemail on Plaintiff's cell phone and requested a call back.

*Wednesday, April 6th, 2011 10:42 AM*

11. Plaintiff called Defendant Armstrong back on the number he left on her voicemail, which was his direct line.

12. Defendant Armstrong stated that he was attempting to collect the debt on Plaintiff's second mortgage and wanted to know if she had a plan to pay it.

13. Plaintiff explained that she did not plan to pay for it because the home was in foreclosure.

14. Plaintiff explained that that every effort was made to sell the property, or refinance the loan into her ex-husband's name, but that all efforts had failed.

15. Defendant Armstrong became verbally aggressive almost immediately in this conversation.

16. Defendant Armstrong said that the debt would not go away with the foreclosure and that the second mortgage company would end up suing and placing a judgment against Plaintiff if the debt was not paid.

17. Defendant Armstrong then offered Plaintiff a $9,000.00 settlement.

18. Plaintiff explained that she didn't have $9,000.00 and that she would not pay the entire amount as her ex-husband was also jointly responsible for this debt.

19. Defendant Armstrong told Plaintiff to put the $9,000.00 on a credit card.

20. Plaintiff declined to do so because she did not feel she could ever responsibly repay that amount of credit card debt.

21. Plaintiff was very upset and suggested to Defendant Armstrong that she might have to file bankruptcy.

22. Defendant Armstrong falsely told Plaintiff that she could not discharge this debt in bankruptcy because "George Bush" had passed some legislation that no longer allowed bankruptcy to eliminate student loans or second mortgages.

23. Defendant Armstrong also stated that Plaintiff would not qualify for a Chapter 7 bankruptcy, but maybe could file Chapter 13, but that she would still wind up having to pay the entire amount owed on her second mortgage.

24. Defendant Armstrong then requested her current mailing address, which she refused to give him because she did not want this bill coming directly to her when her ex-husband was also responsible for the debt.

25. Defendant Armstrong threateningly said they would find Plaintiff and that they had already verified where she was employed.

26. Defendant Armstrong pushed again for Plaintiff to pay the debt with her credit card and then file bankruptcy on all of her debts, including the credit card.

27. Defendant Armstrong then told Plaintiff that Defendants would eventually garnish her wages and that he was surprised that they had not already done so.

28. Plaintiff was very intimidated and scared by the threatening language Defendant Armstrong was using to collect this debt.

29. Throughout this call, Defendant Armstrong repeatedly stated that this debt was not going to go away and insisted that Plaintiff put this debt on her credit card and then file bankruptcy.

30. Defendant Armstrong continually pressured Plaintiff for payment despite the fact that Plaintiff told him that she did not have this money.

31. During this collection call, Defendant Armstrong told Plaintiff that Defendants would sue her and that she had to pay this bill.

32. Defendant Armstrong also told Plaintiff that Defendants "had" to sue her.

33. Defendant Armstrong was verbally abusive throughout this call and frightened Plaintiff into believing that she was going to be sued by Defendants if she did not accept the $9,000 settlement offer.

34. Defendant Armstrong asked Plaintiff whether or not she knew what a "judgment" was, implying that Defendants would sue her and get a judgment against her.

35. Defendant Armstrong told Plaintiff that Defendants would put a judgment against her name.

36. Defendant Armstrong told Plaintiff that she would not be able to do anything financially thereafter, as a result of the lawsuit and judgment.

37. Defendant Armstrong told Plaintiff that they would find her and that he already "confirmed" where she worked and what she did for a living.

38. Plaintiff was very intimidated that she might lose her job as a result of Defendant Armstrong's collection activity.

39. Plaintiff was very upset by the tone and tenor of this call and cried her eyes out for nearly an hour after this very upsetting phone call.

40. Plaintiff was at work at the time and cried uncontrollably after this call, even calling a friend afterwards to report her emotional distress.

41. Plaintiff suffered from extreme panic and anxiety during and after this collection call with Defendant Armstrong.

42. Plaintiff genuinely believed that Defendants were going to sue her for this debt and obtain a judgment against her, ruin her credit, and impair her finances.

43. Thereafter the call ended.

44. All of the above-described collection communications made to Plaintiff by Defendant Armstrong and other collection employees employed by Defendant CCS, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(6), 1692e(7), 1692e(8), 1692e(10), and 1692f, amongst others.

*Summary*

45. All of the above-described collection communications made to Plaintiff by each individual Defendant and other collection employees employed by Defendant CCS, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

46. The above-detailed conduct by these Defendants of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions

of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

47. This abusive collection call made by Defendants caused Plaintiff to at times cry and made her physically ill because of the aggressive manner in which this debt was collected by these Defendants.

48. Plaintiff was at work doing an audit for her company in the middle of this abusive collection call and was embarrassed by being made to cry while at work a remote client site.

49. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

50. This abusive collection call by Defendant CCS and its employees pushed Plaintiff to consider bankruptcy as a way out of these abusive calls.

51. Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and caused her unnecessary personal strain.

## *Respondeat Superior Liability*

52. The acts and omissions of this individual Defendant, and the other debt collectors employed as agents by Defendant CCS who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant CCS.

53. The acts and omissions by this individual Defendant and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant CCS in collecting consumer debts.

54. By committing these acts and omissions against Plaintiff, this individual Defendant and these other debt collectors were motivated to benefit their principal, Defendant CCS.

55. Defendant CCS is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

56. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. The foregoing acts and omissions of each Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

59. As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY REVELATION OF PRIVATE FINANCIAL FACTS TO THIRD PARTY

60. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

61. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

62. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors, albeit without a private right of action, when it stated as part of its purposes:

> **It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.**

15 U.S.C. § 6801(a) (emphasis added).

63. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns

or affairs of Plaintiff, namely, by unlawfully attempting to collect a debt in an abusive manner, contacting her work place, threatening to sue her, and thereby invading Plaintiff's privacy.

64. Defendants and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's rights to privacy.

65. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

66. The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

67. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against each Defendant:

### **COUNT I.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

### **15 U.S.C. § 1692 et seq.**

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each Defendant and for Plaintiff;

### **COUNT II.**

### **INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY REVELATION OF PRIVATE FINANCIAL FACTS TO THIRD PARTY**

- for an award of actual damages from each Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 3, 2011              **BARRY & SLADE, LLC**

By:  **s/Peter F. Barry**
Peter F. Barry, Esq.
Attorney I.D.#0266577
2021 East Hennepin Avenue, Suite 195
Minneapolis, Minnesota 55413-1773
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
pbarry@lawpoint.com

pfb/ra                          **Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA )
) ss
COUNTY OF HENNEPIN )

Pursuant to 28 U.S.C. § 1746, Plaintiff Brooke Schommer, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___May___  ___3RD___, ___2011___
             Month        Day        Year

_____
Signature